24-7015. Mr. Casey, are you ready? May it please the court, my name is Andrew Casey. I'm here on behalf of Giovante Lee. I know it's the last argument of the morning. Thank you all for having me here. I think we're still awake. I think we can listen. Excellent. What I want to be able to structure my argument today, because I know that there are six issues that were briefed, I'm not trying to describe any of the issues as harmless in any way, but I think that I want to start with the most harmful of issues, which is the issue about the pattern enhancement, and then I'll move on to the other issues. Of course, the moment that you all tell me, move on to something else, I'm happy to. Whenever I was looking at the pattern enhancement prior to sentencing and also in briefing and getting ready for today, the 2G2.2B5 enhancement requires a finding that the government showed that there was a pattern involving sexual abuse or exploitation of a minor. The commentary in the guidelines, though, is very specific, that this does not include possession, receipt, access with intent to view. I know that the government had cited the Coates decision from the circuit, which is a 2023 case, and that had discussed a separate situation where he had had 2001 and 2002 convictions for child exploitation crimes, which fit the language that was within that particular enhancement. In this particular one, I find that there would be a lot of issues as to why we can't apply this particular enhancement and why it was error to apply the enhancement. First is that AMPL-E notes that there were numerous other instances of JD, the minor in this case, making videos to satisfy the pattern. And I'll remind the quick facts of this case is that there are two phones at issue here. There was the phone that was liable to the receipt charge in Count 4, and then there was another rose gold iPhone that was related to the possession, Count 5. In the pattern part that we're discussing here, there was testimony that was elicited from JD to suggest that there were other videos made. And I want to make sure that that part of the record is cited here specifically. I have that as page 86 of the third record on appeal. These are the sealed transcripts. And I have this testimony from JD to be far more vague than I think that the government has identified it to be. First is there was a description about how videos were recorded, and there was questions, what did you do with the videos? And JD had answered, nothing. Did you ever transmit it to anybody? No. Did you know if the defendant ever sent it to anybody? No. You're saying that you never sent a video. I don't know. You don't recall? I don't recall. Did you give him permission to send videos to anybody? I don't. And the answer was no. And the reason why this is important is because there were no other videos of JD found or any other type of illicit material of JD found. There was one video in this case, which is the one that was presented to the jury. It was a video that was recorded by JD herself, and it was on a mail that we can't see his face. He either appears to be asleep or at least he's turned in a different way. And the officer, Agent Smalley, at trial had testified that he couldn't identify who it was in the video based upon that. And so I don't think that that's a significant basis to be able to then uphold that there was a pattern of some type of sexual exploitation that was going. Don't there only have to be two videos? Two or more, yes, Your Honor. And so we could just go with M.W., couldn't we? With what? M.W., the two videos from the jail. Okay. That was the next subset of the argument. With M.W., I don't believe that this is the creation of a video as we look at it from the way that we describe JD. I don't think that it's child exploitation at all when we're talking about the M.W. circumstance. Isn't it defined as child exploitation if you entice and induce someone under 18 years old to produce that sort of a video? So I think that there certainly are other crimes about enticing somebody to produce a video. Here, the one thing that I think is startling is this is the jail recording system. This is not anything that is maintained by either the defendant or M.W. at the time. Neither of them, I mean, presumably all of my clients know that they're being recorded in there, but they don't have access to any of the types of recording, nor do they have any ability to transmit them in any particular way. But still, you don't have to under the wording of the enhancement. You don't have to be able to capture that and be able to transport and so forth. It's the simple creation of it, enticing someone under 18 years old to do that. And that was done. Well, I believe that certainly that there was jail discussions about show me a body part, and then a body part was shown. And full body. Full body part that was shown by the lady that was carrying his baby at the time. And it's unique in this particular instance because of who it is that controls the video if there was actual production of it. I don't think that the pattern can apply to that particular circumstance. Well, what in the definition is missing in the definition of sexual abuse or pattern? Pattern means any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor, and whether it's even part of the instant offense. And then sexual abuse or exploitation is defined as any of these acts and any of these statutes. And among those acts is producing or enticing someone to do a video like this. Under 18 years of age, I'm struggling to see why the MW videos don't qualify and if there are two of them, why it's not a pattern. Now, if you're arguing that the guideline is unconstitutional somehow because it exceeds the statute, that's one argument, but I don't understand you to say that. By the terms of these guideline texts as well as the application note, I don't understand your argument. There were two videos that he solicited. He asked for these to be done. The young girl complied and bared her full body. Can I give a counter-hypothetical or a counter-reference to this? Maybe this will help make my argument make some sense. Whenever I'm thinking about this case, I'm thinking about it not differently at all than if we have two folks around that age who are talking with each other over FaceTime or one of those apps where you're talking to each other over a phone and one of them shows each other a body part. There's no recording that happens with it. It's just simply over the course of the Internet broadways or the signals that are going through. I think that's far more consistent here with what's happening rather than him actually creating the video because, again, this is not something that he's able to take back with him. This isn't anything along those lines. It doesn't have to be. It doesn't have to be something where there's a record or a cassette or whatever instrument. It can be live streamed, and it's good enough under the statute as one of the qualifying acts that would be sexual exploitation of a minor. I think that my question, without conceding the idea that it's sexual exploitation of a minor, is to note all the different backgrounds about whether or not that should have been strictly applied to it. No, I did not say that it was unconstitutionally vague as far as that goes, but those were my issues that I had with the way that we were presenting that pattern enhancement is because the pattern has to involve sexual abuse or exploitation of a minor, and I think that when we're looking at what enticing means in the full context of all the other statutes that are being charged with here, which, of course, he's not charged at all with enticing or exploitation or anything along those lines. Do you think he needs to be? Here? Yes, for the guideline application to apply? No, he certainly doesn't need to for the guideline application to apply. I mean, the guideline would exist if it was acquitted conduct or any number of different things, but I do think in this particular case there's a reason he's not charged with it, and it's because there is no real enticement in that sense. He asked her to disrobe. That's true. There was discussion about him asking her to do that. All right, and under 2251A, which is one of the offenses that counts as a sexual abuse or exploitation, it says that anything producing a visual depiction of conduct for the purpose of transmitting a live visual depiction counts. So the notion that you have to have recorded and be able to transmit it to others and so forth, I don't think that's part of the statute. I think part of the statute that I am arguing about, though, is production and whether or not this is producing in that particular sense. I guess it's just a matter of reading the statute and deciding it alive, as the statute says, producing any visual depiction for the purpose of transmitting a live visual depiction, which it was transmitted to him at the jail. That's true. It was transmitted to him. He was able to see it. So the statutory terms are met. Yes, Your Honor. And if the statutory terms are met, then you have your sexual exploitation for purposes of the guideline. All you need is two. You ask her twice. It seems like the guideline applies. I understand the Court's position. I'd stand on the argument with it. Does the Court mind if we try another issue? All right, excellent. On count four, we discussed the receipt issue, and I'll acknowledge at the beginning that although we're talking about de novo review, we're also talking about the lower preponderance of evidence standard in this case because of the way that we've crafted the venue rules. And so it is a much lower burden upon the government in order to do so. I attempted to cite very specifically to the record about what Agent Smalley was describing in terms of what he knew about receipt in this particular case, which makes it distinct from the possession because we're talking about receipt on the number that he was set to differently. And I think that some of the things that are important when we're talking about this with the Cabrales decision or that specific part, and on top of Agent Smalley acknowledging that he had no idea where it was produced, is that I think that this case is a lot more distinct than what was cited under the Cameron decision by the government in this case. They had cited a First Circuit decision where the case involved receipt and transport to describe a continuing offense. I would note that the facts there were New York and Maine were the two different parts, but that there was a laptop that had had the videos. That laptop would have received it in one state, and then the transportation, which was the secondary charge, would have gone to the other state. I think that that's different here than what they were able to show with the transmission or receipt count for Count 4, and I don't believe that even under the lower burden of preponderance of evidence they were able to satisfy that part of it. Which brings to Count 5, which is the constructive possession of the rose gold iPhone. I think the arguments that are poor for us are that this was found in a bedroom at his mother's house, which was in the Ardenmore area. I think that the arguments that are hard for the appellee in this case, though, are that the rose gold iPhone was specifically identified as belonging to J.D., and I think I've wanted to address one of the arguments. He had clearly used it. Say that again? The defendant had clearly used the phone, and it was found in his bedroom, was it? It was found in what they were describing as his bedroom. Now, when you look at the pictures of the bedroom, it's barren. There's a plywood floor. There's a mattress without any types of blankets or any types of things on it. It does have some things in the closet like his Social Security number, which, you know. It's pretty good. But it's at his mom's house. I imagine a lot of people keep Social Security cards at their parents' house and different things like that. But that's where the rose gold iPhone was. Now, that means that there's direct control of the iPhone. What the government tried to point to to show that he had opened it was that there was email communications. And I pulled that part of the transcript. It's page 301 of that record. And that was specifically because on that phone there was an email address where the Chickasaw Nation had sent emails to him related to, you know, any number of types of things related to his benefits. And I don't think that shows enough to show that he's using that particular phone. It just means that that phone had access to his email and would have received emails on it, which isn't abnormal for boyfriends and girlfriends to be able to have access to each other's emails on the phone. Sometimes it's not even that, you know, difficult, not even that different for wives and husbands to do the same thing. But I don't think that that's enough to show that he knew that there was illicit material on the phone or that he had accessed it on the phone. There's just the phone there, but there's no evidence. Hadn't he actually referred to this illicit material that was on the phone? Didn't he respond to a message from the victim about it? There was discussion on the jail calls that the government had referenced to say that this case that they're talking about is about videos that were sent to each other. There were text messages that were sent that were vague to the idea of, I'm finna post it, I'm fixing to put all our stuff on Facebook, nothing that specifically described the video or describes anything about the video. I have got about seven seconds left, so I apologize for not having more to talk to you about. Thank you all so much. Good morning, Your Honors. Patrick Flanagan on behalf of the United States. May it please the Court, the United States is requesting that the judgment and sentence in this case be affirmed. With regards, taking it in order of just how the defendant presented his argument, Judge Phillips, I think you expressed it, the party's stipulation for sentencing and M.W. provided sufficient support for the assessment of that enhancement in the sentence that the judge handed down. That was covered at length. I'd rather speak more to the venue of the receipt charge. The jury was properly instructed. The standard of review for the jury's verdict is very deferential to support the verdict, and this was a continuing offense where venues governed by 18 United States Code Section 3237A. There was sufficient record evidence regarding this offense to establish where the video was from and where it ended up, and that was the Eastern District of Oklahoma. There was testimony from the victim in her testimony that these videos were recorded in the Eastern District of Oklahoma. There was testimony in the record with Special Agent Smalley, and that's at page 356 and 362 of the trial transcript that shows that the video was recorded on the day it was, in fact, transmitted to the defendant's number. There was acknowledgment from the defendant in text messages regarding receipt, and it was ultimately discovered in his bedroom in the Eastern District of Oklahoma when the search was conducted by officers of the Chickasaw Nation Police Force. When you say continuing offense, what's your understanding of what made this a continuing offense? Your Honor, the elements that have to be proven for this offense involve means and methods of interstate commerce, and this was transmitted through means and methods of interstate commerce. Based on that, the clear language of 3237A makes it a continuing offense for purposes of venue. So either end of the commerce can be the location for venue? Yes, Your Honor. Under 3237A, it reads in the second part, any offense involving the use of the mails, transportation, and interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and except as otherwise expressly provided by enactment of Congress may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves. Based on the evidence in this case, and that was presented at trial, that was the eastern district where it started and where it ended. Based on that, venue was proven and the jury found such after being properly instructed. The other arguments that my colleague didn't get to address during his oral argument were issues of proof, mainly. Let me ask you about one of those. Yes. What's the evidence that the defendant intended to shoot and harm the girlfriend? Because he aimed low, apparently. He had had opportunities to shoot her before she got in the car and didn't. Give us your best case of how the intent element was satisfied. Your Honor, that does come to my argument regarding assault, of whether the specific intent under the assault with a dangerous weapon statute is objective or subjective. In regards to objectivity, the Fifth Circuit has opined in Schaeffer that it's an objective standard. Let's assume it's an objective test. What would you have to prove? Your Honor, we would have to prove that a reasonably prudent person in the position of the victim would have assumed the defendant's intent was to inflict bodily harm. She actually testified she didn't think he was, right? She testified that, but with regard to other evidence at trial, I'll call that statement into question. And regarding the standard of evidence for sufficiency of evidence, on review, the Court of Appeals considers both circumstantial and direct evidence but does not weigh the evidence or consider the credibility of witnesses. Reversal for insufficient evidence is proper only when no reasonable jury can find the defendant guilty beyond reasonable doubt. And you said the Fifth Circuit states the test regarding intent as whether the victim, the alleged victim, would have reasonably inferred that the assailant was trying to hurt her. Whether a reasonable person in the place of the victim, Your Honor. It's not the victim itself. The reason for the objective standard is sometimes you actually have foolhardy people. Like a Navy SEAL may not be as apprehensive as a 10-year-old, but in an objective standard, their subjective knowledge experience doesn't matter. In this case, you had the discharge of a firearm into an occupied vehicle of two people. You had it stopped only by an amplifier that wasn't actually hooked up. Where was the amplifier? The amplifier was in the trunk of the vehicle. When it was only stopped by the amplifier, what path did the vehicle have? Could it have hurt? The girlfriend was in the front seat, is that right? Yes, Your Honor. Could that bullet have hurt her if it wasn't stopped by the amplifier? If it wasn't stopped, it could have. There was not evidence done to see whether it would have or not, but it was on what the jury could find of a trajectory that would have hurt her. I thought the PSR said it would have. The PSR may have said it would have. I don't recall exactly. That was the argument that was, in fact, submitted to the jury. We did argue that to the jury that it would have, that it was in line. There was no, as the defense noted, there was no kind of trajectory analysis that was performed or is in the record regarding that case. That was an argument we made that the jury could use their common sense to so conclude. Regarding other evidence of the defendant's intent, once the firearm was discharged, he was observed by eyewitnesses, including the first witness, Ms. Holly, who testified he looked up, saw her, and then fled the scene. This court has long held that evidence of flight is evidence of consciousness of guilt and, therefore, guilt. That would be further evidence of his intent at the time he discharged the firearm and what a reasonable person in the position of the victim would have believed the defense intent was at that point. There was further flight subsequent to the search of the defendant's room. That's referenced in the evidence that was presented at trial in Government's Exhibit 54 when he admitted he was on the run after the search. What was the distance that was shot? How far had the car gone from his firearm? The distance that was stated in trial was 20 feet. When the victim testified and Mr. Artis was conducting that, I believe the record is she said, from me to you, and he said 20 feet, and she said yes. So 20 feet discharge of a firearm into an occupied vehicle and then subsequent flight and evasion. Just with regards to the objective standard, the Eleventh Circuit has adopted that as well as the Fifth. That's a case U.S. v. Gilbert, 692 Federal 2nd, 1340, and that's as far back as 1982. The Ninth Circuit has cited favorably to the objective standard, and that was in U.S. v. Miller. It's an unpublished opinion from 1993, 9 Federal 3rd, 1555. This case is a lot like the Perez case that we cite in our brief from the Fifth Circuit where they say any kind of discharge of a firearm, a reasonable person would view that as an intent to cause bodily harm. So for those reasons, we're asking that the verdict for Count 3 and Count 4 be affirmed because there was sufficient evidence for a jury to find the specific intent in that element and find the defendant guilty of both assault with a dangerous weapon with intent to do bodily harm in Indian country and the 924C violation. Just one more time getting back to the pattern enhancement that the court assessed with sentencing. Judge Philips, you did note that the enticement and procurement and transmission of even if it hadn't been recorded would have been enough, and we submit that it is. If there are no further questions. What statute were you relying on? Were you relying on 2251A? I was relying on 2251A. The enticement, procurement, and persuasion of a transmission in interstate commerce of an individual under 18 exposing all of her body. That was why the party sentencing stipulation was crafted. Was it recorded? It was, in fact, recorded as well. So the agents viewed it? Yes. That was the crux of Special Agent Smalley's stipulation for sentencing was that he viewed it and this is what he viewed. Okay. Can I ask you one stray question? Sure. And it may be waivable, but weren't the possession and the receipt counts multiplicitous? Didn't one have to get dismissed and wasn't? Your Honor, there is case law from this court that possession where it's possession in interstate commerce and possession with the Indian country would be barred by double jeopardy. It could certainly be argued that count five was multiplicitous with count four. It's somewhat moot in that he received a concurrent sentence and it's not any additional time. In addition, an element that had to be proven for count five that didn't have to be proven for count four was the Indian country status of the area in which he possessed it. That is an additional element that did not have to be proven with count four as part of the elements. If there are no further questions, I'll yield the rest of my time. Thank you. Thank you, Council. I think you'd like two seconds. You don't need it. I only have seven seconds. Okay. Thank you, Council. Case is submitted. Counsel are excused. Court will be in recess until nine tomorrow morning.